ASH

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Edward Lewis Brown,

          Plaintiff,

v.

County of Maricopa, et al.,

          Defendants.

No.   CV 18-04465-PHX-DWL (ESW)

**ORDER**

On December 6, 2018, Plaintiff Edward Lewis Brown filed, through counsel, a civil rights complaint and paid the filing fee. (Doc. 1.) On December 20, 2018, the parties filed a stipulation agreeing that Plaintiff would have until January 31, 2019 to file an amended complaint and that Defendant would have until February 28, 2019 to file a responsive pleading. (Doc. 9.) By Order dated December 21, 2018, the Court granted the stipulation, but noted that because the Court would be required to screen any amended complaint pursuant to 28 U.S.C. § 1915A(a), Defendants would not be required to file an answer or other responsive pleading until directed to do so by the Court. (Doc. 10.)

On February 11, 2019, Plaintiff filed a Motion for Leave to File Amended Complaint, attaching thereto two copies (one redlined, the other not) of his proposed First Amended Complaint. (Doc. 12.) Defendant filed a response noting that the filing was untimely, but that Defendant did not otherwise have any objection to Plaintiff's filing. (Doc. 13.) In a February 26, 2019 Order, the Court dismissed the First Amended Complaint because Plaintiff had failed to state a claim. (Doc. 17.) The Court gave Plaintiff 30 days

1    to file a second amended complaint that cured the deficiencies identified in the Order.  (*Id.*)

2    On March 28, 2019, Plaintiff filed a Second Amended Complaint ("SAC").  (Doc.

3    19.)  By Order dated June 27, 2019, the Court dismissed the SAC and this action for failure

4    to state a claim.  (Doc. 22.)  Judgment was entered the same day.  (Doc. 23.)

5    On July 11, 2019, Plaintiff filed a "Motion for New Trial, or For Relief From

6    Judgment, or Order, or to Alter or Amend Judgment," to which he also attached a proposed

7    Third Amended Complaint ("TAC").  (Docs. 24, 25.)  On July 16, 2019, Defendant filed a

8    Motion for Clarification seeking to understand whether Plaintiff's motion was, effectively,

9    a motion for reconsideration and whether any response was authorized under Local Rule

10   7.2(g)(2).  (Doc. 26.)  By Order dated July 18, 2019, the Court construed Plaintiff's filing

11   as a motion for reconsideration, for which no response was necessary.  (Doc. 27.)  On July

12   22, 2019, Plaintiff filed a notice advising that his motion was "designated as a 'Motion for

13   New trial, or For relief from judgment, or to Alter or Amend Judgment'" in order to

14   "extend[] the time for appeal."  (Doc. 28.)

15   By Order dated October 15, 2019, the Court denied the motion for reconsideration

16   but, in its discretion, vacated the judgment and allowed Plaintiff to file his proposed TAC.

17   (Doc. 29.)  After obtaining an extension of time, Defendant filed a motion to dismiss the

18   TAC.  (Doc. 38.)  In response, Plaintiff filed a motion to amend (Doc. 40) seeking

19   permission to file a *Fourth* Amended Complaint ("FAC").  Defendant opposes the motion

20   on the ground that amendment is futile.  (Doc. 43).  Plaintiff has now filed a reply in support

21   of his motion to amend.  (Doc. 44.)  Accordingly, the briefing on the two motions now

22   pending before the Court—(1) Defendant's motion to dismiss the FAC (Doc. 38) and (2)

23   Plaintiff's motion to amend (Doc. 40)—is now complete.

24   For the reasons that follow, the Court will grant the motion to dismiss, deny the

25   motion to amend, and dismiss this action.

26   **I.      Motion to Dismiss**

27   Defendant seeks dismissal of the TAC on the ground that it fails to state a claim for

28   which relief may be granted.  (Doc. 38.)  Plaintiff does not substantively respond to

TERMPSREF

Defendant's arguments, but instead states that "[o]ur response to [Defendant's] motion to dismiss is our motion asking the Court to permit the filing of the fourth amended complaint . . . . " (Doc. 39 at 2.) Accordingly, the Court finds that Plaintiff does not oppose Defendant's motion to dismiss the TAC, so the motion will be granted.

## II.    Motion to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the court may grant leave to amend "freely" "when justice so requires." However, the policy toward permitting liberal amendment of pleadings "must be tempered with considerations of 'undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Schlacter-Jones v. General Telephone*, 936 F.2d 435, 443 (9th Cir. 1991) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Where amendment would be futile, there is no reason to prolong litigation by allowing further amendments. *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1039 (9th Cir. 2002); *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir.1983). A proposed amended pleading is futile when it is subject to dismissal. *Moore v. Kayport Pkg Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

To avoid dismissal, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for

- 3 -

relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

### A.    The Proposed FAC

In his four-count proposed FAC, Plaintiff names Maricopa County Sheriff Paul Penzone, Maricopa County, and various unknown individuals referred to as "John and Jane Does 1-49"[1] as Defendants. Defendant Penzone is sued in his official capacity, while the Doe Defendants are sued in their individual capacities. Plaintiff seeks damages and costs.

As with his previous complaints, Plaintiff's claims arise from a common core of operative facts, as follows. On August 5, 2018, Plaintiff was shot in the back by a Phoenix Police officer while running from the officer. (Doc. 40 at 6.) The bullet destroyed Plaintiff's spine, leaving him paraplegic. (*Id.*) After receiving hospital treatment, Plaintiff was booked into a Maricopa County Jail on September 21, 2018. (*Id.*) "John Does 1-4" placed Plaintiff "in a cell in his wheelchair and left [him] there." (*Id.*) Plaintiff's catheterization equipment was taken from him, causing him to soil himself. (*Id.*) The FAC asserts that "[t]his was done by nurses in the jail, referred to here as Jane Does 1-4, and their supervisor, Jane Doe 5." (*Id.*) Plaintiff was also not given any assistance in moving from his wheelchair to his bed by John Does 1-4. (*Id.* at 7.)

At some point, Plaintiff was placed in the jail infirmary, where nurses — apparently in reference to Jane Does 1-5 — "harassed him." (*Id.*) The nurses also "came to his cell to harass him" after he was released from the infirmary. (*Id.*) "Throughout his entire stay in the jail," Plaintiff was denied all medications by Jane Does 1-5, including pain medications. (*Id.*) Plaintiff was only provided with one Tylenol per day, and "[t]he nurses stated that he could not have any medication because they would first have to read his

---

[1]    Except where specified, the Court will refer to these Defendants as the "Doe Defendants."

TERMPSREF

medical records and they did not have time to do that." (*Id.* at 8.) The FAC states that this "reflected culpable actions by jail officials, designated here as John Does 5-10." (*Id.*)

Plaintiff was "then placed in the general high-security population where he was subject to mistreatment" as a result of his injuries. (*Id.*) Citing a number of cases — which the FAC asserts "show Defendants' knowledge of these abuses in the past and their failure to correct them" — the FAC states that "[t]hey" were "on notice for number of years [*sic*]" about "abusive practices" in the jail, but "have not taken adequate measures to correct them." (*Id.* at 8-9.)

Plaintiff further alleges that the "Defendnts [*sic*] knew about the practice of race on race but did nothing to stop it, and thereby ratified it." (*Id.* at 9.) Plaintiff "was denied access to certain facilities including some of the telephones, because of his race." (*Id.*) And "[w]hile the racism was initiated by the white prisoners, it was condoned and ratified by the Defendants . . . ." (*Id.*)

Accordingly, the FAC alleges that the Doe Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by depriving him of his catheterization equipment, leaving him in his own bed "soaked in his own urine and defecation," and "depriving him of sanitary living conditions and pain relief" (Count One); that Maricopa County violated Plaintiff's "civil rights" because the "Maricopa County Sheriff's Office, as an extension of Maricopa County, . . . fail[ed] to enforce standards providing inmates of sanitary conditions and pain relief, and otherwise ratif[ied] policies, customs, or practices which deprive inmates of such," which amounts to "cruel and unusual punishment" (Count Two); that the Doe Defendants have violated Plaintiff's rights under the "Disability Statutes," apparently referring to the Americans with Disabilities Act (ADA, 42 U.S.C. § 12111 *et seq.*) (Count Three); and that Maricopa County has violated Plaintiff's rights under the ADA by "failing to enforce proper standards providing inmates of disability accommodations, and otherwise ratifying policies, customs, or practices . . . which deprive inmates of such" (Count Four).

…

…

- 5 -

**B.     Discussion**

       1.     Eighth Amendment

As an initial matter, Plaintiff's continuing insistence that the Eighth Amendment provides a basis for his claims remains incorrect as a matter of law.  Despite being repeatedly informed by both the Court and defense counsel that the Eighth Amendment simply does not apply to Plaintiff because he is a pretrial detainee,[2] Plaintiff continues to insist that it does.  (Doc. 39 at 2 ["One area of criticism that is not valid [i]s [Defendant's] claim that the 8th and 14th amendment prohibitions against cruel and unusual punishment [d]o not apply to a pretrial detainee."]; Doc. 44 at 1 ["The Eighth Amendment Applies."].) Plaintiff asserts that *Bell v. Wolfish*, 441 U.S. 520 (1979), provides—or, at least, does not preclude—that "under the proper circumstances" a pretrial detainee might properly assert claims of "<u>cruel and unusual punishment</u> under the 8th and 14th amendment."  (Doc. 39 at 2, emphasis in original.)  Plaintiff does not, however, explain what those "circumstances" might be and *Bell* explicitly provides otherwise:

> *The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees.* Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment. . . .  "Eighth Amendment scrutiny is appropriate *only after* the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . .  Where the State seeks to impose punishment without [a formal adjudication of guilt], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."

441 U.S. at 535 n.16 (citations omitted and emphases added).

---

[2]     *See* Doc. 17 at 6 ("Plaintiff should be aware that a pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment — not the cruel and unusual punishment clause of the Eighth Amendment — to be free from punishment prior to an adjudication of guilt.") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); Doc. 22 at 4 ("The Court has previously informed Plaintiff that because he is a pretrial detainee, the Eighth Amendment is inapplicable to his claims.  Rather, the Fourteenth Amendment provides the relevant protections.  Accordingly, Plaintiff's claims are dismissed to the extent he seeks relief pursuant to the Eighth Amendment."); Doc. 38-1 at 7 (defense counsel's correspondence to Plaintiff's counsel: "The 8th amendment has no applicability to pre-trial detainees.").

Plaintiff's intransigence appears to stem from his misunderstanding of the protections available to him.  Those protections turn on his status as a pretrial detainee, not on the nature of any mistreatment he claims to have suffered.  That is, the Fourteenth Amendment protects Plaintiff simply because he is a pretrial detainee, just as the Eighth Amendment protects convicted prisoners simply because they are convicted prisoners.  As Plaintiff has been repeatedly informed, the Fourteenth Amendment protects pretrial detainees from punishment of any kind, including punishment Plaintiff believes rises to the level of being "cruel and unusual," before an adjudication of guilt.  *Bell*, 441 U.S. at 535. No matter how onerous the punishment Plaintiff received—even if Plaintiff believes such punishment to be "cruel and unusual"—it does not give rise to an additional right under the Eighth Amendment.  Accordingly, and as with his previous complaints, the proposed FAC is subject to dismissal to the extent it seeks relief based on the Eighth Amendment.

### 2.    Count One

In Count One, Plaintiff asserts the Doe Defendants violated his Eighth and Fourteenth Amendment rights.  To the extent Plaintiff seeks relief based on the Eighth Amendment, the claim fails as a matter of law, and is thus subject to dismissal.  *See* Part II.B.1, *supra*.

To the extent Plaintiff seeks relief based on a violation of the Fourteenth Amendment, he has failed to state a claim.  To prevail on a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges, or immunities and (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  Further, vague and conclusory allegations will not support a cause of action, and even a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not

initially pleaded.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

   "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'"  *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).  To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

   Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case.  *Id.  See also Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  However, "a de minimis level of imposition" is insufficient.  *Bell*, 441 U.S. at 539 n.21.  In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment."  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Id.*

   As to John Does 1-4, the FAC alleges they placed Plaintiff in a cell in his wheelchair, did not help him move from his wheelchair to his bed, and that "this constituted *actionable neglect* by John Does 1-4." (Doc. 40 at 6-7, emphasis added.)  But the FAC does not allege any facts to support that these Defendants were aware that Plaintiff was unable to move from his wheelchair to the bed without assistance and, in any event, "the Due Process

Clause [of the Fourteenth Amendment] is simply not implicated by a *negligent* act of an official causing unintended loss or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original).  The Constitution "does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).  Accordingly, the FAC fails to state a claim against John Does 1-4 in Count One.

As to John Does 5-10, the FAC alleges they placed Plaintiff in the general high-security population.[3]  The FAC also alleges that "[t]hey have been on notice for number [sic] of years of abusive practices at the jail, and have not taken adequate measures to correct them," and cites several other cases challenging conditions in the Maricopa County Jails.  (Doc. 40 at 8-9.)  However, the FAC does not allege any facts to support that John Does 5-10 were aware that placing Plaintiff in the general high-security population would expose him to substantial risk.  Further, other than stating they are "jail officials," the FAC has failed to identify who these Defendants are, or how they came to be "on notice" of any "abusive practices at the jail" in any of the cases the FAC cites to "show Defendants' knowledge of these abuses in the past and their failure to correct them."  The FAC does not, for instance, allege that John Does 5-10 were defendants in any of the previous cases or whether they were even employed at the jail at the time of those cases (the earliest of which dates back nearly 25 years).  Indeed, the FAC does not even specify what "abusive

---

[3]    Plaintiff also alleges that "[t]he nurses stated that he could not have any medication because they would first have to read his medical records and they did not have time to do that.  This reflected culpable actions by jail officials, designated here as John Does 5-10." (Doc. 40 at 8.)  As such, it is unclear whether John Does 5-10 are "jail officials," whether they are "nurses," or whether they are "jail officials" who are somehow responsible for the "nurses."  The structure of Plaintiff's syntax suggests it is the latter, in that Plaintiff states that "[t]his"—apparently in reference to the actions taken by the "nurses"—reflects "culpable actions" by "jail officials."  But as Plaintiff has been repeatedly informed, there is no *respondeat superior* liability under § 1983, and therefore a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability on the supervisor.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff has not alleged any facts to support that John Does 5-10 personally participated in or directed the actions of the nurses, were aware of any such actions but failed to act, or formed any policies that resulted in Plaintiff's injuries.

TERMPSREF

1   practices" were at issue in those other cases or how they might be relevant to the claims in

2   this case.  Simply stating they were "similar to the ones involved in this case" or "reflected

3   medical neglect" is conclusory and insufficient.[4]  As such, the FAC fails to state a claim

4   against John Does 5-10 in Count One.

5          With regard to Jane Doe 5, the FAC alleges she was the "supervisor" of Jane Does

6   1-4.  (Doc. 40 at 6.)  As Plaintiff has been previously informed, there is no *respondeat*

7   *superior* liability under § 1983, so a defendant's position as the supervisor of persons who

8   allegedly violated Plaintiff's constitutional rights does not impose liability on the

9   supervisor.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978); *Hamilton v.*

10  *Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

11  1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff

12  must plead that each Government-official defendant, through the official's own individual

13  actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The FAC does not allege

14  that Jane Doe 5 personally participated in a deprivation of Plaintiff's constitutional rights,

15  was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's

16  injuries.  Accordingly, the FAC fails to state a claim against Jane Doe 5.

17         As to Jane Does 1-4, the FAC alleges only that they "t[ook] away medications."

18  Nowhere, however, does the FAC identify what medications Plaintiff had been prescribed,

19  when he was prescribed those medications and by whom, whether he informed Jane Does

20  1-4 (or any other named Defendant) of his need for the medication before they "took it"

21  from him, or even whether he informed any named Defendant that he was in pain.

22         To the extent the FAC also alleges that Jane Does 1-4 "harassed" Plaintiff, it fails

23  to describe in any way what this "harassment" consisted of or explain how the harassment

24  rises to the level of a constitutional violation.  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139

25  (9th Cir. 1987) ("verbal harassment or abuse … is not sufficient to state a constitutional

26  deprivation under 42 U.S.C. § 1983") (quoting *Collins v. Cundy*, 603 F.2d 825 (10th Cir.

27  ────────────
    [4]     At least five of the cases cited in the FAC relate to excessive force claims and do
28  not support allegations regarding a practice or custom of medical neglect.  The FAC does
    not allege that any Defendant used excessive force against Plaintiff.

1979)).  *See also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (mere threatening language and gestures do not amount to constitutional violations); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) (the use of words, no matter how violent, does not constitute a § 1983 violation).

Finally, to the extent the FAC alleges that Jane Does 1-4 took Plaintiff's catheterization equipment from him, the FAC fails to allege when they did this or how long he was without his catheterization equipment.  Indeed, it is unclear how long Plaintiff was even in the county jail.  The FAC states that Plaintiff "was arrested and placed in the County jail on September 21, 2018."  (Doc. 40 at 6).  However, it appears that Plaintiff posted bond and was released that same day, suggesting he was actually in custody at the county jail for, at most, a matter of hours.[5]

In short, the FAC fails to state a claim in Count One against any named Defendant, so Count One is subject to dismissal.

### 3.   Count Two

Count Two is asserted against Maricopa County.  However, other than stating that "Maricopa County is responsible for violating Plaintiff's civil rights under 42 U.S.C. § 1983," the FAC fails to identify the basis for this claim.[6]  The FAC states that Plaintiff's alleged mistreatment "amounts to cruel and unusual punishment," implying that Plaintiff seeks relief pursuant to the Eighth Amendment.  However, for the reasons set forth in Part II.B.1, *supra*, such a claim fails as a matter of law.

To the extent the FAC may be attempting to assert a Fourteenth Amendment claim against Maricopa County, it also fails to state a claim.  As Plaintiff has been previously informed, a municipality may not be held liable unless its policy or custom caused the

---

[5]    *See* Maricopa County Superior Court case no. CR2018-005410 (docket entry dated September 21, 2018, stating "BOND—Surety/$50000/Bankers Insurance Company") (http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2018-005410) (last visited January 24, 2020).

[6]    Section 1983 only provides a vehicle for seeking relief of violations of rights protected by the Constitution or other federal law.  It does not secure those rights itself. *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).

constitutional injury.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  Thus, a municipality may not be sued solely because an injury was inflicted by one of its employees or agents.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).[7]  Rather, the municipality is liable only when the execution of its policy or custom inflicts the constitutional injury.  *Id.*; *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005). Thus, a § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless the plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury.  *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

> There are three ways to meet the policy, practice, or custom requirement for municipal liability under § 1983: (1) the plaintiff may prove that a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action . . . .  An unconstitutional policy need not be formal or written to create municipal liability under § 1983; however, it must be so permanent and well settled as to constitute a custom or usage with the force of law.  Furthermore, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker."

*Avalos v. Baca*, 596 F.3d 583, 587-88 (9th Cir. 2010) (citations omitted).

The FAC alleges:  "Maricopa County Sheriff's Office, as an extension of Maricopa County, by failing to enforce standards providing inmates of sanitary conditions and pain relief, and otherwise ratifying policies, customs, or practices which deprive inmates of

---

[7]     As such, Plaintiff's repeated allegations that "[a]n employer-employee relationship existed between the [Doe Defendants] and Maricopa County or between them and Sheriff Penzone in his official capacity," fails as a matter of law to support any *Monell* claim he is making.

1
2
3
4
5
6
7
8
9
10

such." (Doc. 40 at 11.)  The Court is unable to deduce what, precisely, the FAC is alleging, but in any event, and as Plaintiff has been previously informed, the Maricopa County Sheriff's Office is a non-jural entity incapable of being sued in a § 1983 action.  *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) (citing *Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010)).  Further, the sheriff's "office" is not "an extension of Maricopa County," but is simply an administrative creation of the county sheriff—who is an elected official—that allows the sheriff to carry out his statutory duties.  *See* Ariz. Rev. Stat. §§ 11-441(A)(5), 31-101.  As such, any claim that the sheriff's office "fail[ed] to enforce standards" while acting "as an extension of Maricopa County" fails as a matter of law.

11
12
13
14
15
16
17
18
19
20
21
22
23
24

The FAC further alleges that "[t]he unnamed John and Jane Doe Defendants"—presumably referring to those Defendants discussed in Count One—"were acting in accordance with official policy, custom, or practice of Defendants when they violated Plaintiff's civil rights." (Doc. 40 at 11.)  However, the FAC fails to describe the "official" policy, identify where it is memorialized, or, more important, identify who promulgated it.  Simply referring to the "Defendants," without specifying which Defendant supposedly enacted the policy, practice, or custom at issue, is insufficient to sustain a *Monell* claim when those Defendants are a mix of individuals and official entities.[8]  To the extent Plaintiff may have intended to direct this allegation against Maricopa County, he has failed to explicitly do so despite being informed of the claim's deficiencies by defense counsel. (*See* Doc. 43-1.)   Even a liberal interpretation of a civil rights complaint—to which Plaintiff is not entitled because he is represented by counsel—may not supply essential elements of the claim that were not initially pleaded.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  In any event, the FAC fails to describe in any way what

25

26
27
28

[8]    Similarly, the FAC fails to sufficiently state a *Monell* claim to the extent it alleges that "the medical abuses and neglect … reflect policies of *Defendants* to take away medications and medical equipment (including catheters) from incoming prisoners, and not make adequate efforts to promptly return or replace them," and that "*Defendants* are liable for these civil rights violations because of their unconstitutional implementation of policies and customs and usages." (Doc. 40 at 7, 9).

TERMPSREF

1  "policy, custom, or practice" the Doe Defendants were following when they "violated
2  Plaintiff's civil rights."

3      The FAC also alleges that the "medical abuses and neglect" Plaintiff suffered
4  "reflects policy, custom, and practices, to not provide adequate training and supervision to
5  prevent[] incidents such as the nurses harassing the plaintiff[.]" (Doc. 40 at 7-8).  "A
6  municipality's failure to train an employee who has caused a constitutional violation can
7  be the basis for § 1983 liability where the failure to train amounts to deliberate indifference
8  to the rights of person with whom the employee comes into contact."  *Long v. County of*
9  *Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489
10 U.S. 378, 388 (1989)).  "The issue is whether the training program is adequate and if not,
11 whether such inadequate training can justifiably be said to represent municipal policy."
12 *Long*, 442 F.3d at 1186 (citing *City of Canton*, 489 U.S. at 390).

13     Here, however, the FAC fails to describe what training or supervision Maricopa
14 County provided or to explain why that training was inadequate.  The FAC's allegations
15 are untethered to any factual support, wholly conclusory, and fail to state a claim.  *Ivey*,
16 673 F.2d at 268.

17     The FAC also alleges that there was a policy "to limit prisoners to one Tylenol a
18 day regardless of much pain they are in."  (Doc. 40 at 8.)  However, as noted above, the
19 FAC alleges no facts to support that Plaintiff was prescribed any medications, that he
20 informed any named Defendant of any such prescription, or even that he informed any
21 named Defendant that he was in pain.  Accordingly, even if Maricopa County had a policy
22 of only permitting prisoners one Tylenol per day, the FAC fails to allege any facts to
23 support that such a policy caused any of Plaintiff's alleged injuries.

24     Additionally, the FAC alleges that "[t]hese policies"—apparently in reference to the
25 "medical abuses and neglect" Plaintiff suffered—"include a failure to give adequate
26 discretion to employees to permit them to permit prisoners to keep their medications and
27 medical equipment, or to return or replace them promptly."  (Doc. 40 at 7-8.)  This
28 allegation is insufficient to state a claim because, as with the other *Monell* claims, the FAC

- 14 -

1    fails to identify where this "policy" is memorialized, who created it, or any facts supporting

2    the existence of such a policy, practice, or custom.  Rather, the FAC appears to assume that

3    any constitutional injury Plaintiff suffered must *ipso facto* mean it was the product of some

4    policy.  However, "[p]roof of a single incident of unconstitutional activity is not sufficient

5    to impose liability under *Monell*, unless proof of the incident includes proof that it was

6    caused by an existing, unconstitutional municipal policy, which policy can be attributed to

7    a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  The

8    FAC fails to identify any other instances of this supposed policy or any other facts to

9    support its existence and attribute it to Maricopa County.

10        Finally, to the extent the FAC alleges that "Defendants are also liable under the

11   doctrine of ratification, for their failure to rectify the practices listed above and the

12   mistreatment of Plaintiff" (Doc. 40 at 9-10), it also fails to state a claim.  A supervisor's

13   ratification of another's conduct can form the basis for liability if the ratification decision

14   approves both the subordinate's decision and the basis for it and is the product of a

15   conscious choice to ratify the conduct.  *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092,

16   1102 (D. Mont. 2008) (citations and quotations omitted).  Here, however, the FAC does

17   not allege that either Maricopa County or Sheriff Penzone were even aware of any

18   mistreatment Plaintiff allegedly suffered, much less that they approved of the basis for such

19   mistreatment and made the conscious choice to do so.

20        The FAC fails to state a claim in Count Two, so it is subject to dismissal.

21            4.    Count Three

22        In Count Three, the FAC asserts that the Doe Defendants violated Plaintiff's rights

23   under the ADA.  But as Plaintiff has been repeatedly informed, under the plain language

24   of Title II of the ADA, a ***public entity*** must deny Plaintiff the benefit of a service or

25   program.  *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir.

26   2006).  "[I]ndividual defendants cannot be held personally liable for violations of the

27   ADA." *Id.*  Accordingly, because the claim in Count Three of the FAC is only directed at

28

the Doe Defendants, who are only named in their individual capacities, it fails as a matter of law and is subject to dismissal.[9]

5.      Count Four

The FAC indicates that Count Four is brought pursuant to the ADA and is directed against Maricopa County.  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded in participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In addition, in order to state a claim for damages, a plaintiff must show discriminatory intent on the part of defendants. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

Here, the FAC alleges no facts to support that any action was taken against Plaintiff by any Defendant "because of" his disability; rather, the FAC only alleges that *other prisoners* "denied [Plaintiff] access to certain facilities including some of the telephones *because of his race*."  (Doc. 40 at 9, emphasis added.)  The conclusory allegation within Count Four that the Doe Defendants "discriminated against Plaintiff" (Doc. 40 at 13) is thus insufficient.  *Ivey*, 673 F.2d at 268.

The FAC's further allegation that "Defendants"—which, again, fails to identify *which* Defendant is being referenced—"are liable for failing to enforce proper standards providing inmates of disability accommodations, and otherwise ratifying policies, customs, or practices, partially described above, which deprive inmates of such" (Doc. 40 at 13) is both syntactically incoherent and fails to state a claim.  The FAC does not identify or otherwise describe what "proper standards" or "accommodations" it is referencing or explain how any Defendant denied Plaintiff access to them.  Similarly, the FAC's allegation that the Doe Defendants—who, again, are not proper defendants to an ADA claim—"deprived Plaintiff of program benefits as described above and discriminated against Plaintiff" (Doc. 40 at 13) fails to identify what "program benefits" are being

---

[9]      To the extent Plaintiff may have intended to bring this claim against the Doe Defendants in their *official* capacities, it would be duplicative of Count Four, and subject to dismissal on that basis.

TERMPSREF

referenced, how or when Plaintiff was denied those benefits, or any facts to support that Plaintiff suffered any discrimination "because of" his disability.  The FAC's reference to "the corrections program," as the Court has previously noted, is left wholly undescribed, and appears to be little more than adding the word "program" to the fact of being detained. As with Plaintiff's past complaints, the FAC's allegations are yet again far too vague and conclusory to sustain a cause of action.

Finally, the FAC fails to allege any facts to support that any actions taken by any Defendant were intentionally discriminatory.  Accordingly, Count Four of the FAC fails to state a claim for which relief may be granted and is subject to dismissal.

### C.  Conclusion

"Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where a plaintiff has previously been permitted to amend his complaint.  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend.  *Moore*, 885 F.2d at 538.

Plaintiff, who has been represented by counsel throughout this proceeding, has made four efforts at crafting a viable complaint and has been unable to do so despite specific instructions from the Court.  Indeed, the Court previously warned counsel that he "is expected to know the law applicable to Plaintiff's claims, the factual requirements for stating such a claim, and to comply with federal pleading requirement."  (Doc. 29 at 3.) Thus, for the reasons set forth above, the Court finds that Plaintiff's request that he be given a fifth opportunity to amend would be futile because the proposed FAC yet again fails to state a claim upon which relief may be granted.  Accordingly, Plaintiff's motion to amend will be denied.  *Moore*, 885 F.2d at 538.  This case is dismissed.

**IT IS ORDERED:**

(1)  The reference to the Magistrate Judge is **withdrawn**.

(2)     Defendant's Motion to Dismiss the Third Amended Complaint (Doc. 38) is **granted**.

(3)     Plaintiff's Motion to Amend (Doc. 40) is **denied**.

(4)     This action is **dismissed**, and the Clerk of Court must enter judgment accordingly.

(5)     The Clerk of Court shall further make an entry on the docket stating that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

Dated this 31st day of January, 2020.

_____

Dominic W. Lanza
United States District Judge

TERMPSREF